(Slip Opinion)     OCTOBER TERM, 2010     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SKINNER *v.* SWITZER, DISTRICT ATTORNEY FOR 31ST JUDICIAL DISTRICT OF TEXAS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 09–9000.   Argued October 13, 2010—Decided March 7, 2011

*District Attorney's Office for Third Judicial Dist.* v. *Osborne*, 557 U. S. ___, ___, left unresolved the question whether a convicted state prisoner seeking DNA testing of crime-scene evidence may assert that claim in a civil rights action under 42 U. S. C. §1983 or may assert the claim in federal court only in a petition for a writ of habeas corpus under 28 U. S. C. §2254.

A Texas jury convicted petitioner Skinner and sentenced him to death for murdering his girlfriend and her sons. He claimed that a potent alcohol and drug mix rendered him physically unable to commit the brutal murders, and he identified his girlfriend's uncle as the likely perpetrator. In preparation for trial, the State tested some of the physical evidence, but left untested several items, including knives found on the premises, an axe handle, vaginal swabs, fingernail clippings, and certain hair samples. More than six years later, Texas enacted Article 64, which allows prisoners to gain postconviction DNA testing in limited circumstances. Invoking Article 64, Skinner twice moved in state court for DNA testing of the untested biological evidence. Both motions were denied. The Texas Court of Criminal Appeals (CCA) affirmed the first denial of relief on the ground that Skinner had not shown, as required by Article 64.03(a)(2), that he "would not have been convicted if exculpatory results had been obtained through DNA testing." The CCA affirmed the second denial of relief on the ground that Skinner had not shown, as required by Article 64.01(b)(1)(B), that the evidence was not previously tested "through no fault" on his part.

Skinner next filed the instant federal action for injunctive relief under §1983, naming as defendant respondent Switzer, the District

Attorney who has custody of the evidence that Skinner would like to have tested.  Skinner alleged that Texas violated his Fourteenth Amendment right to due process by refusing to provide for the DNA testing he requested.  The Magistrate Judge recommended dismissal of the complaint for failure to state a claim, reasoning that postconviction requests for DNA evidence are cognizable only in habeas corpus, not under §1983.  Adopting that recommendation, the District Court dismissed Skinner's suit.  The Fifth Circuit affirmed.

*Held:* There is federal-court subject-matter jurisdiction over Skinner's complaint, and the claim he presses is cognizable under §1983. Pp. 7–15.

  (a) Federal Rule of Civil Procedure 8(a)(2) generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument.  Skinner stated his due process claim in a paragraph alleging that the State's refusal "to release the biological evidence for testing . . . deprived [him] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence . . . ." His counsel has clarified that Skinner does not challenge the prosecutor's conduct or the CCA's decisions; instead, he challenges Texas' postconviction DNA statute "as construed" by the Texas courts.  Pp. 7–8.

  (b) The *Rooker-Feldman* doctrine does not bar Skinner's suit.  This Court has applied the doctrine only in the two cases from which it takes its name, *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413, *District of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462.  See *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U. S. 280.  Given "the narrow ground" the doctrine occupies, *id.*, at 284, the Court has confined *Rooker-Feldman* "to cases . . . brought by state-court losers . . . inviting district court review and rejection of [a state court's] judgments."  *Ibid.*  Skinner's complaint encounters no *Rooker-Feldman* shoal.  "If a federal plaintiff 'present[s] [an] independent claim,' " it is not an impediment to the exercise of federal jurisdiction that the "same or a related question" was earlier aired between the parties in state court.  *Id.,* at 292–293.  A state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action.  See, *e.g., Feldman*, 460 U. S., at 487.  Because Skinner's federal case—which challenges not the adverse state-court decisions but the Texas statute they authoritatively construed—falls within the latter category, there was no lack of subject-matter jurisdiction over his federal suit. Pp. 8–10.

  (c) Measured against this Court's prior holdings, Skinner has properly invoked §1983.  This Court has several times considered when a state prisoner, complaining of unconstitutional state action, may pur-

sue a civil rights claim under §1983, and when habeas corpus is the prisoner's sole remedy. The pathmarking decision, *Heck* v. *Humphrey*, 512 U. S. 477, concerned a state prisoner who brought a §1983 action for damages, alleging that he had been unlawfully investigated, arrested, tried, and convicted. This Court held that §1983 was not an available remedy because any award in the plaintiff's favor would "necessarily imply" the invalidity of his conviction. See *id.*, at 487. In contrast, in *Wilkinson* v. *Dotson*, 544 U. S. 74, the Court held that prisoners who challenged the constitutionality of administrative decisions denying them parole eligibility, could proceed under §1983, for they sought no "injunction ordering . . . immediate or speedier release into the community," *id.*, at 82, and "a favorable judgment [would] not 'necessarily imply' the invalidity of [their] conviction[s] or sentence[s]," *ibid.* Here, success in Skinner's suit for DNA testing would not "necessarily imply" the invalidity of his conviction. Test results might prove exculpatory, but that outcome is hardly inevitable, for those results could also prove inconclusive or incriminating. Switzer argues that, although Skinner's immediate aim is DNA testing, his ultimate aim is to use the test results as a platform for attacking his conviction. But she has found no case in which the Court has recognized habeas as the sole remedy where the relief sought would not terminate custody, accelerate the date of release, or reduce the custody level. Contrary to the fears of Switzer and her *amici,* in the Circuits that currently allow §1983 claims for DNA testing, there has been no flood of litigation seeking postconviction discovery of evidence associated with the questions of guilt or punishment. The projected toll on federal courts is all the more implausible regarding DNA testing claims, for *Osborne* has rejected substantive due process as a basis for such claims. More generally, in the Prison Litigation Reform Act of 1995, Congress has placed constraints on prisoner suits in order to prevent sportive federal-court filings. Nor is there cause for concern that the instant ruling will spill over to claims relying on *Brady* v. *Maryland*, 373 U. S. 83. *Brady,* which announced a constitutional requirement addressed to the prosecution's conduct pretrial, proscribes withholding evidence "favorable to an accused" and "material to [his] guilt or to punishment." *Cone* v. *Bell*, 556 U. S. ___, ___. Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a successful *Brady* claim necessarily yields evidence undermining a conviction: *Brady* claims therefore rank within the traditional core of habeas corpus and outside the province of §1983. Pp. 10–14.

   (d) Switzer's several arguments why Skinner's complaint should fail for lack of merit, unaddressed by the courts below, are ripe for consideration on remand. P. 14.

Syllabus

363 Fed. Appx. 302, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. THOMAS, J., filed a dissenting opinion, in which KENNEDY and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–9000

_____

## HENRY W. SKINNER, PETITIONER *v.* LYNN SWITZER, DISTRICT ATTORNEY FOR THE 31ST JUDICIAL DISTRICT OF TEXAS

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[March 7, 2011]

JUSTICE GINSBURG delivered the opinion of the Court.

We granted review in this case to decide a question presented, but left unresolved, in *District Attorney's Office for Third Judicial Dist.* v. *Osborne*, 557 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 12–13): May a convicted state prisoner seeking DNA testing of crime-scene evidence assert that claim in a civil rights action under 42 U. S. C. §1983, or is such a claim cognizable in federal court only when asserted in a petition for a writ of habeas corpus under 28 U. S. C. §2254? The Courts of Appeals have returned diverse responses. Compare *McKithen* v. *Brown*, 481 F. 3d 89, 99 (CA2 2007) (claim seeking DNA testing is cognizable under §1983); *Savory* v. *Lyons*, 469 F. 3d 667, 669 (CA7 2006) (same); *Bradley* v. *Pryor*, 305 F. 3d 1287, 1290–1291 (CA11 2002) (same), with *Harvey* v. *Horan*, 278 F. 3d 370, 375 (CA4 2002) (claim is not cognizable under §1983) and *Kutzner* v. *Montgomery County*, 303 F. 3d 339, 341 (CA5 2002) *(per curiam)* (same).

In *Wilkinson* v. *Dotson*, 544 U. S. 74 (2005), we comprehensively surveyed this Court's decisions on the respective

provinces of §1983 civil rights actions and §2254 federal habeas petitions. Habeas is the exclusive remedy, we reaffirmed, for the prisoner who seeks "immediate or speedier release" from confinement. *Id.*, at 82. Where the prisoner's claim would not "necessarily spell speedier release," however, suit may be brought under §1983. *Ibid.* Adhering to our opinion in *Dotson*, we hold that a postconviction claim for DNA testing is properly pursued in a §1983 action. Success in the suit gains for the prisoner only access to the DNA evidence, which may prove exculpatory, inculpatory, or inconclusive. In no event will a judgment that simply orders DNA tests "necessarily impl[y] the unlawfulness of the State's custody." *Id.*, at 81. We note, however, that the Court's decision in *Osborne* severely limits the federal action a state prisoner may bring for DNA testing. *Osborne* rejected the extension of substantive due process to this area, 557 U. S., at ___ (slip op., at 19), and left slim room for the prisoner to show that the governing state law denies him procedural due process, see *id.*, at ___ (slip op., at 18).

I

In 1995, a Texas jury convicted petitioner Henry Skinner and sentenced him to death for murdering his live-in girlfriend, Twila Busby, and her two sons. Busby was bludgeoned and choked with an axe handle and her sons were stabbed to death; the murders were committed in the house Busby shared with Skinner.

Skinner never denied his presence in the house when the killings occurred. He claimed, however, that he was incapacitated by large quantities of alcohol and codeine. The potent alcohol and drug mix, Skinner maintained at trial, rendered him physically unable to commit the brutal murders charged against him. Skinner identified, as a likely perpetrator, Busby's uncle, Robert Donnell (now deceased), an ex-convict with a history of physical and

sexual abuse.[1]  On direct appeal, the Texas Court of Crimi-
nal Appeals (CCA) affirmed Skinner's conviction and
sentence. *Skinner* v. *State*, 956 S. W. 2d 532, 546 (1997).
The CCA's opinion described the crime-scene evidence in
detail:

> "As they approached the house . . . , the police noticed
> a trail of blood spots on the ground running from the
> front porch to the fence line.  There was a blood smear
> on the glass storm door and a knife on the front porch.
> Upon entering the residence, the police found Twila's
> dead body on the living room floor. . . . An ax handle
> stained with blood and hair was leaning against the
> couch near her body and a black plastic trash bag con-
> taining a knife and a towel with wet brownish stains
> on it was laying between the couch and the coffee
> table.
>   "[One officer] proceeded to the bedroom where
> [Busby's two sons] usually slept in bunk beds.  [The
> officer] found [one] dead body laying face down on the
> upper bunk, covered by a blood spotted blanket. . . . A
> door leading out of the bedroom and into a utility
> room yielded further evidence.  [He] noticed a bloody
> handprint located about 24 inches off the floor on the
> frame of this door.  He also noted a bloody handprint
> on the door knob of the door leading from the kitchen
> to the utility room and a handprint on the knob of the
> door exiting from the utility room into the backyard.
>   "[When] police arrested [Skinner] . . . [t]hey found
> him standing in a closet wearing blood-stained socks

_____

[1] At trial, a defense witness testified that, on the evening of the kill-
ings, Busby had spurned Donnell's "rude sexual advances." *Skinner* v.
*State*, 956 S. W. 2d 532, 535 (Tex. Crim. App. 1997).  A neighbor related
at a federal postconviction hearing that she observed Donnell, a day or
two after the murders, thoroughly cleaning the carpets and inside of his
pickup truck.  See *Skinner* v. *Quarterman*, 528 F. 3d 336, 345 (CA5
2008).

and blood-stained blue jeans." *Id.*, at 536.

Investigators also retained vaginal swabs taken from Busby.

In preparation for trial, "the State tested the blood on [Skinner's] clothing, blood and hair from a blanket that partially covered one of the victims, and hairs on one of the victim's back and cheeks." *Skinner* v. *State*, 122 S. W. 3d 808, 810 (Tex. Crim. App. 2003). The State also tested fingerprint evidence. Some of this evidence— including bloody palm prints in the room where one victim was killed—implicated Skinner, but "fingerprints on a bag containing one of the knives" did not. *Ibid.* Items left untested included the knives found on the premises, the axe handle, vaginal swabs, fingernail clippings, and additional hair samples. See *ibid.*[2]

In the decade following his conviction, Skinner unsuccessfully sought state and federal postconviction relief. See *Skinner* v. *Quarterman*, 576 F. 3d 214 (CA5 2009), cert. denied, 559 U. S. ___ (2010). He also pursued informal efforts to gain access to untested biological evidence the police had collected at the scene of the crime.[3]

In 2001, more than six years after Skinner's conviction, Texas enacted Article 64, a statute allowing prisoners to gain postconviction DNA testing in limited circumstances.

––––––––––

[2] After Skinner's conviction, the State performed DNA tests on certain additional materials, but Skinner took no part in the selection of those materials or their testing. Skinner maintains that these *ex parte* tests were inconclusive. See Complaint ¶19, App. 12 (this "testing raised more questions than it answered"). But see *Skinner* v. *State*, 122 S. W. 3d 808, 811 (Tex. Crim. App. 2003) (some findings were "inculpatory").

[3] Skinner's trial counsel, although aware that biological evidence remained untested, did not request further testing. Postconviction, Skinner sought DNA testing of vaginal swabs and finger nail clippings taken from Busby, blood and hairs on a jacket found next to Busby's body, and biological material on knives and a dish towel recovered at the crime scene. Complaint ¶22, App. 14–15.

Tex. Code Crim. Proc. Ann., Art. 64.01(a) (Vernon Supp. 2010). To obtain DNA testing under Article 64, a prisoner must meet one of two threshold criteria. He may show that, at trial, testing either was "not available" or was "available, but not technologically capable of providing probative results." Art. 64.01(b)(1)(A). Alternatively, he may show that the evidence was not previously tested "through no fault" on his part, and that "the interests of justice" require a postconviction order for testing. Art. 64.01(b)(1)(B). To grant a motion for postconviction testing, a court must make further findings, prime among them, the movant "would not have been convicted if exculpatory results had been obtained through DNA testing," and "the [Article 64] request . . . [was] not made to unreasonably delay the execution of sentence or administration of justice." Art. 64.03(a)(2).

Invoking Article 64, Skinner twice moved in state court, first in 2001 and again in 2007, for DNA testing of yet untested biological evidence. See *supra*, at 4, n. 3. Both motions were denied. Affirming the denial of Skinner's first motion, the CCA held that he had failed to demonstrate a "reasonable probability . . . that he would not have been . . . convicted if the DNA test results were exculpatory." *Skinner* v. *State*, 122 S. W. 3d, at 813.

Skinner's second motion was bolstered by discovery he had obtained in the interim.[4] The CCA again affirmed the denial of relief under Article 64, this time on the ground that Skinner failed to meet the "no fault" requirement. See *Skinner* v. *State*, 293 S. W. 3d 196, 200 (2009).[5] Dur-

---

[4] On the basis of discovery in a federal postconviction proceeding, an expert retained by Skinner concluded that Skinner, Busby, and her two sons could be excluded as sources of a hair collected from Busby's right hand after the killings. See Record 190. See also Complaint ¶27, App. 18.

[5] The District Attorney, in response to Skinner's second motion, informed the Texas district court that "[t]o the best of the State's infor-

ing postconviction proceedings, the CCA noted, trial coun-sel testified that he had not "ask[ed] for testing because he was afraid the DNA would turn out to be [Skinner's]." *Id.*, at 202. That decision, the CCA concluded, constituted "a reasonable trial strategy" that the court had no cause to second-guess. *Id.*, at 209.

Skinner next filed the instant federal action for injunc-tive relief under §1983, naming as defendant respondent Lynn Switzer, the District Attorney whose office prose-cuted Skinner and has custody of the evidence Skinner would like to have DNA tested. Skinner's federal-court complaint alleged that Texas violated his Fourteenth Amendment right to due process by refusing to provide for the DNA testing he requested. Complaint ¶33, App. 20–21. The Magistrate Judge recommended dismissal of the complaint for failure to state a claim upon which relief can be granted. App. 24–41. Under the governing Circuit precedent, *Kutzner* v. *Montgomery County*, 303 F. 3d 339, the Magistrate Judge observed, postconviction requests for DNA evidence are cognizable only in habeas corpus, not under §1983. App. 39. Adopting the Magistrate Judge's recommendation, the District Court dismissed Skinner's suit. *Id.,* at 44–45.

On appeal, the United States Court of Appeals for the Fifth Circuit affirmed, 363 Fed. Appx. 302 (2010) *(per curiam),* reiterating that "an action by a prisoner for post-conviction DNA testing is not cognizable under §1983 and must instead be brought as a petition for writ of habeas corpus," *id.,* at 303. On Skinner's petition,[6] we granted

_____

mation, knowledge, and belief, the items sought to be tested are still available for testing, the chain of custody is intact, and the items are in a condition to be tested although the State has not sought expert opinion in that regard." Record 202. See also Complaint ¶29, App. 19.

[6] The State of Texas scheduled Skinner's execution for March 24, 2010. We granted Skinner's application to stay his execution until further action of this Court. 559 U. S. ___ (2010).

certiorari, 560 U. S. ___ (2010), and now reverse the Fifth Circuit's judgment.

## II
## A

Because this case was resolved on a motion to dismiss for failure to state a claim, the question below was "not whether [Skinner] will ultimately prevail" on his procedural due process claim, see *Scheuer* v. *Rhodes*, 416 U. S. 232, 236 (1974), but whether his complaint was sufficient to cross the federal court's threshold, see *Swierkiewicz* v. *Sorema N. A.*, 534 U. S. 506, 514 (2002). Skinner's complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument. See 5 C. Wright & A. Miller, Federal Practice & Procedure §1219, pp. 277–278 (3d ed. 2004 and Supp. 2010).

Skinner stated his due process claim in a paragraph alleging that the State's refusal "to release the biological evidence for testing . . . has deprived [him] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence . . . ." Complaint ¶33, App. 20–21. As earlier recounted, see *supra*, at 5–6, Skinner had twice requested and failed to obtain DNA testing under the only state-law procedure then available to him. See Complaint ¶¶22–31, App. 14–20.[7] At oral argument in this Court, Skinner's counsel clarified the gist of Skinner's due process claim: He does not challenge the prosecutor's conduct or the

—————
[7] He also persistently sought the State's voluntary testing of the materials he identified. See Complaint ¶31, App. 20.

decisions reached by the CCA in applying Article 64 to his motions; instead, he challenges, as denying him procedural due process, Texas' postconviction DNA statute "as construed" by the Texas courts. Tr. of Oral Arg. 56. See also *id.*, at 52 (Texas courts, Skinner's counsel argued, have "construed the statute to completely foreclose any prisoner who could have sought DNA testing prior to trial[,] but did not[,] from seeking testing" postconviction).[8]

The merits of Skinner's federal-court complaint assailing the Texas statute as authoritatively construed, and particularly the vitality of his claim in light of *Osborne*, see *supra*, at 2—unaddressed by the District Court or the Fifth Circuit—are not ripe for review. We take up here only the questions whether there is federal-court subject-matter jurisdiction over Skinner's complaint, and whether the claim he presses is cognizable under §1983.

B

Respondent Switzer asserts that Skinner's challenge is "[j]urisdictionally [b]arred" by what has come to be known as the *Rooker-Feldman* doctrine. Brief for Respondent 48–49 (boldface deleted). In line with the courts below, we conclude that *Rooker-Feldman* does not bar Skinner's suit.

As we explained in *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U. S. 280 (2005), the *Rooker-Feldman* doctrine has been applied by this Court only twice, *i.e.*, only in the two cases from which the doctrine takes its name: first, *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413 (1923), then 60 years later, *District of Columbia*

—————

[8] Unlike the petitioner in *District Attorney's Office for Third Judicial Dist.* v. *Osborne*, 557 U. S. ___ (2009), who "attempt[ed] to sidestep state process through . . . a federal lawsuit," *id.*, at ___ (slip op., at 17), Skinner first resorted to state court, see *supra*, at 5–6. In this respect, Skinner is better positioned to urge in federal court "the inadequacy of the state-law procedures available to him in state postconviction relief." *Osborne*, 557 U. S., at ___ (slip op., at 18).

*Court of Appeals* v. *Feldman*, 460 U. S. 462 (1983). Both cases fit this pattern: The losing party in state court[9] filed suit in a U. S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment. Alleging federal-question jurisdiction, the plaintiffs in *Rooker* and *Feldman* asked the District Court to overturn the injurious state-court judgment. We held, in both cases, that the District Courts lacked subject-matter jurisdiction over such claims, for 28 U. S. C. §1257 "vests authority to review a state court's judgment solely in this Court." See *Exxon*, 544 U. S., at 292.

We observed in *Exxon* that the *Rooker-Feldman* doctrine had been construed by some federal courts "to extend far beyond the contours of the *Rooker* and *Feldman* cases." *Id.*, at 283. Emphasizing "the narrow ground" occupied by the doctrine, *id.*, at 284, we clarified in *Exxon* that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgments." *Ibid.*

Skinner's litigation, in light of *Exxon*, encounters no *Rooker-Feldman* shoal. "If a federal plaintiff 'present[s] [an] independent claim,'" it is not an impediment to the exercise of federal jurisdiction that the "same or a related question" was earlier aired between the parties in state court. *id.*, at 292–293 (quoting *GASH Assocs.* v. *Rosemont*, 995 F. 2d 726, 728 (CA7 1993); first alteration in original); see *In re Smith*, 349 Fed. Appx. 12, 18 (CA6 2009) (Sutton, J., concurring in part and dissenting in part) (a defendant's federal challenge to the adequacy of state-law procedures for postconviction DNA testing is not within the

—————

[9] The judgment assailed in *Feldman* was rendered by the District of Columbia Court of Appeals, equivalent for this purpose to a state's highest court.

"limited grasp" of *Rooker-Feldman*).

As earlier noted, see *supra*, at 7–8, Skinner does not challenge the adverse CCA decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed. As the Court explained in *Feldman*, 460 U. S., at 487, and reiterated in *Exxon*, 544 U. S., at 286, a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action.[10] Skinner's federal case falls within the latter category. There was, therefore, no lack of subject-matter jurisdiction over Skinner's federal suit.[11]

C

When may a state prisoner, complaining of unconstitutional state action, pursue a civil rights claim under §1983, and when is habeas corpus the prisoner's sole remedy? This Court has several times considered that question. Pathmarking here is *Heck* v. *Humphrey*, 512 U. S. 477 (1994). Plaintiff in that litigation was a state prisoner serving time for manslaughter. He brought a §1983 action for damages, alleging that he had been unlawfully investigated, arrested, tried, and convicted. Although the complaint in *Heck* sought monetary damages only, not release from confinement, we ruled that the plaintiff could not proceed under §1983. Any award in his favor, we observed, would "necessarily imply" the invalid-

---

[10] The Court further observed in *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U. S. 280, 292–293 (2005), that "[w]hen there is parallel state and federal litigation," state preclusion law may become decisive, but "[p]reclusion . . . is not a jurisdictional matter."

[11] Switzer asserts that Skinner could have raised his federal claim in the Article 64 proceeding. See Tr. of Oral Arg. 48. Even if that were so, "*Rooker-Feldman* is not simply preclusion by another name," *Lance* v. *Dennis*, 546 U. S. 459, 466 (2006) (*per curiam*), and questions of preclusion unresolved below are "best left for full airing and decision on remand," *id.*, at 467 (GINSBURG, J., concurring).

ity of his conviction. See *id.*, at 487. When "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the Court held, §1983 is not an available remedy. *Ibid.* "But if . . . the plaintiff's action, even if successful, will *not* demonstrate the invalidity of [his conviction or sentence], the [§1983] action should be allowed to proceed . . . ." *Ibid.*

We summarized the relevant case law most recently in *Wilkinson* v. *Dotson*, 544 U. S. 74 (2005). That case involved prisoners who challenged the constitutionality of administrative decisions denying them parole eligibility. They could proceed under §1983, the Court held, for they sought no "injunction ordering . . . immediate or speedier release into the community," *id.*, at 82, and "a favorable judgment [would] not 'necessarily imply the invalidity of [their] conviction[s] or sentence[s],'" *ibid.* (quoting *Heck*, 512 U. S., at 487; first alteration added).

Measured against our prior holdings, Skinner has properly invoked §1983. Success in his suit for DNA testing would not "necessarily imply" the invalidity of his conviction. While test results might prove exculpatory, that outcome is hardly inevitable; as earlier observed, see *supra*, at 2, results might prove inconclusive or they might further incriminate Skinner. See *Nelson* v. *Campbell*, 541 U. S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'").[12]

Respondent Switzer nevertheless argues, in line with Fifth Circuit precedent, see *Kutzner*, 303 F. 3d, at 341, that Skinner's request for DNA testing must be pursued, if at all, in an application for habeas corpus, not in a §1983 action. The dissent echoes Switzer's argument. See *post*, at 3. Although Skinner's *immediate* plea is simply for an

––––––––

[12] The dissent would muddle the clear line *Heck* and *Dotson* drew, and instead would instruct district courts to resort to "first principles" each time a state prisoner files a §1983 claim in federal court. *Post*, at 2, 7.

order requiring DNA testing, his *ultimate* aim, Switzer
urges, is to use the test results as a platform for attacking
his conviction.  It suffices to point out that Switzer has
found no case, nor has the dissent, in which the Court has
recognized habeas as the sole remedy, or even an available
one, where the relief sought would "neither terminat[e]
custody, accelerat[e] the future date of release from cus-
tody, nor reduc[e] the level of custody."  *Dotson*, 544 U. S.,
at 86 (SCALIA, J., concurring).

Respondent Switzer and her *amici* forecast that a "vast
expansion of federal jurisdiction . . . would ensue" were we
to hold that Skinner's complaint can be initiated under
§1983.  See Brief for National District Attorneys Associa-
tion as *Amicus Curiae* 8.  In particular, they predict a
proliferation of federal civil actions "seeking postconviction
discovery of evidence [and] other relief inescapably associ-
ated with the central questions of guilt or punishment."
*Id.*, at 6.  These fears, shared by the dissent, *post*, at 6, are
unwarranted.[13]

In the Circuits that currently allow §1983 claims for
DNA testing, see *supra*, at 1, no evidence tendered by
Switzer shows any litigation flood or even rainfall.  The

-------

[13] Unlike the parole determinations at issue in *Wilkinson* v. *Dotson*,
544 U. S. 74 (2005), Switzer urges, claims like Skinner's require inquiry
into the State's proof at trial and therefore lie at "the core of the crimi-
nal proceeding itself."  Tr. of Oral 41; see *id.*, at 33–34.  *Dotson* de-
clared, however, in no uncertain terms, that when a prisoner's claim
would not "necessarily spell speedier release," that claim does not lie at
"the core of habeas corpus," and may be brought, if at all, under §1983.
544 U. S., at 82 (majority opinion) (internal quotation marks omitted);
see *id.*, at 85–86 (SCALIA, J., concurring).  Whatever might be said of
Switzer's argument were we to recast our doctrine, Switzer's position
cannot be reconciled with the line our precedent currently draws.  Nor
can the dissent's advocacy of a "retur[n] to first principles."  *Post*, at 7.
Given the importance of providing clear guidance to the lower courts,
"we again see no reason for moving the line our cases draw."  *Dotson*,
544 U. S.,  at 84.

projected toll on federal courts is all the more implausible regarding DNA testing claims, for *Osborne* has rejected substantive due process as a basis for such claims. See *supra*, at 2.

More generally, in the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321–66, Congress has placed a series of controls on prisoner suits, constraints designed to prevent sportive filings in federal court. See, *e.g.*, PLRA §803(d) (adding 42 U. S. C. §1997e to create new procedures and penalties for prisoner lawsuits under §1983); PLRA §804(a)(3) (adding 28 U. S. C. §1915(b)(1) to require any prisoner proceeding *in forma pauperis* to pay the full filing fee out of a percentage of his prison trust account); PLRA §804(c)(3) (adding 28 U. S. C. §1915(f) to require prisoners to pay the full amount of any cost assessed against them out of their prison trust account); PLRA §804(d) (adding 28 U. S. C. §1915(g) to revoke, with limited exception, *in forma pauperis* privileges for any prisoner who has filed three or more lawsuits that fail to state a claim, or are malicious or frivolous). See also *Crawford-El* v. *Britton*, 523 U. S. 574, 596–597 (1998) (PLRA aims to "discourage prisoners from filing claims that are unlikely to succeed," and statistics suggest that the Act is "having its intended effect").

Nor do we see any cause for concern that today's ruling will spill over to claims relying on *Brady* v. *Maryland*, 373 U. S. 83 (1963); indeed, Switzer makes no such assertion. *Brady* announced a constitutional requirement addressed first and foremost to the prosecution's conduct pretrial. *Brady* proscribes withholding evidence "favorable to an accused" and "material to [his] guilt or to punishment." *Cone* v. *Bell*, 556 U. S. ___, ___ (2009) (slip op., at 1). To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeach-

ing"; (2) the State suppressed the evidence, "either willfully or inadvertently"; and (3) "prejudice . . . ensued." *Strickler* v. *Greene*, 527 U. S. 263, 281–282 (1999); see *Banks* v. *Dretke*, 540 U. S. 668, 691 (2004).

Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a *Brady* claim, when successful postconviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment. See *Strickler*, 527 U. S., at 296. And parties asserting *Brady* violations postconviction generally do seek a judgment qualifying them for "immediate or speedier release" from imprisonment. See *Dotson*, 544 U. S., at 82. Accordingly, *Brady* claims have ranked within the traditional core of habeas corpus and outside the province of §1983. See *Heck*, 512 U. S., at 479, 490 (claim that prosecutors and an investigator had "'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'" cannot be maintained under §1983); *Amaker* v. *Weiner*, 179 F. 3d 48, 51 (CA2 1999) ("claim [that] sounds under *Brady* v. *Maryland* . . . does indeed call into question the validity of [the] conviction"); *Beck* v. *Muskogee Police Dept.*, 195 F. 3d 553, 560 (CA10 1999) (same).

## III

Finally, Switzer presents several reasons why Skinner's complaint should fail for lack of merit. Those arguments, unaddressed by the courts below, are ripe for consideration on remand. "[M]indful that we are a court of review, not of first view," *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005), we confine this opinion to the matter on which we granted certiorari and express no opinion on the ultimate disposition of Skinner's federal action.

Opinion of the Court

\*　　\*　　\*

For the reasons stated, the judgment of the Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–9000

_____

## HENRY W. SKINNER, PETITIONER *v.* LYNN SWITZER, DISTRICT ATTORNEY FOR THE 31ST JUDICIAL DISTRICT OF TEXAS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[March 7, 2011]

JUSTICE THOMAS, with whom JUSTICE KENNEDY and JUSTICE ALITO join, dissenting.

The Court holds that Skinner may bring under 42 U. S. C. §1983 his "procedural due process" claim challenging "Texas' postconviction DNA statute." *Ante*, at 8. I disagree.[1] I accept the majority's characterization of the issue here as the question left open in *District Attorney's Office for Third Judicial Dist.* v. *Osborne,* 557 U. S. ___ (2009), *ante*, at 1, where a prisoner challenged the constitutional adequacy of the access to DNA evidence provided by Alaska's "general postconviction relief statute," 557 U. S., at ___ (slip op., at 10). Like Osborne, Skinner seeks to challenge state collateral review procedures.[2] I would

_____

[1] I adopt the majority's view that Skinner has alleged a violation of procedural due process despite the fact that his complaint is more naturally read as alleging a violation of *substantive* due process. I also ignore the questionable premise that the requested relief—DNA testing—would be available in a procedural due process challenge. Compare *Wilkinson* v. *Dotson*, 544 U. S. 74, 77 (2005) (seeking "a new parole hearing conducted under constitutionally proper procedures"), with *Osborne*, 557 U. S., at ___, n. 1 (ALITO, J., concurring) (slip op., at 4, n. 1) (distinguishing *Dotson* because Osborne sought "'exculpatory' evidence").

[2] Skinner challenges Texas' Article 64, Tex. Code Crim. Proc. Ann., Art. 64.01 *et seq.* (Vernon 2006 and Supp. 2010), which provides for

now hold that these claims are not cognizable under §1983.

I

The Court has recognized that §1983 does not reach to the full extent of its "broad language." *Preiser* v. *Rodriguez*, 411 U. S. 475, 489 (1973); see, *e.g., Heck* v. *Humphrey*, 512 U. S. 477, 485 (1994) (§1983 should not "expand opportunities for collateral attack"). But this Court has never purported to fully circumscribe the boundaries of §1983. Cf. *id.*, at 482. Rather, we have evaluated each claim as it has come before us, reasoning from first principles and our prior decisions.

In *Preiser* v. *Rodriguez*, the Court began with the undisputed proposition that a state prisoner may not use §1983 to "challeng[e] his underlying conviction and sentence on federal constitutional grounds." 411 U. S., at 489. This included attacks on the trial procedures. See *id.*, at 486 ("den[ial] [of] constitutional rights at trial"). From there, the Court reasoned that "immediate release from [physi-

––––––––––

postconviction discovery of DNA evidence that can then be used in a state habeas proceeding to challenge the validity of a conviction. See *Ard* v. *State*, 191 S. W. 3d 342, 344 (Tex. App. 2006). Article 64 does not itself "provide a vehicle for obtaining relief," *Ex parte Tuley*, 109 S. W. 3d 388, 391 (Tex. Crim. App. 2002), but rather is by design and by nature part of Texas' collateral review procedures. See Reply Brief for Petitioner 8 ("Because [Article 64] does not give the convicting court authority to overturn a conviction, the prisoner still must bring a habeas proceeding to challenge the conviction").

Although Article 64 is, for the purposes of Skinner's due process challenge, part of the state collateral review process, I do not suggest that a motion under Article 64 is an "application for . . . collateral review" under 28 U. S. C. §2244(d)(2). See *Wall* v. *Kholi*, *post*, at 10, n. 4 (noting that an application for review must "provide a state court with authority to order relief from a judgment"). Texas has divided postconviction discovery of DNA evidence and the application for state habeas into separate proceedings, but both remain parts of the State's collateral review process.

cal] confinement or the shortening of its duration" also cannot be sought under §1983. *Id.*, at 489; see also *Wolff* v. *McDonnell*, 418 U. S. 539 (1974) (refusing to allow a §1983 suit for restoration of good-time credits); *Edwards* v. *Balisok*, 520 U. S. 641 (1997) (refusing to allow a §1983 procedural challenge to the process used to revoke good-time credits). Then, in *Heck* v. *Humphrey*, we addressed §1983 actions seeking damages. 512 U. S., at 483. Determining that such actions were not covered by *Preiser*, we returned to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," 512 U. S., at 486, and concluded that a complaint must be dismissed where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," *id.*, at 487. Most recently, in *Wilkinson* v. *Dotson*, 544 U. S. 74, 82 (2005), we applied the principles from these prior decisions and found cognizable under §1983 a claim that sought to "render invalid the state procedures used to deny parole eligibility . . . and parole suitability."

## II

We have not previously addressed whether due process challenges to state collateral review procedures may be brought under §1983, and I would hold that they may not. Challenges to all state procedures for reviewing the validity of a conviction should be treated the same as challenges to state trial procedures, which we have already recognized may not be brought under §1983. Moreover, allowing such challenges under §1983 would undermine Congress' strict limitations on federal review of state habeas decisions. If cognizable at all, Skinner's claim sounds in habeas corpus.

First, for the purposes of the Due Process Clause, the process of law for the deprivation of liberty comprises all procedures—including collateral review procedures—that

establish and review the validity of a conviction. This has long been recognized for direct appellate review:

> "And while the Fourteenth Amendment does not re-
> quire that a State shall provide for an appellate re-
> view in criminal cases, it is perfectly obvious that
> where such an appeal is provided for, and the prisoner
> has had the benefit of it, the proceedings in the appel-
> late tribunal are to be regarded as part of the process
> of law under which he is held in custody by the State,
> and to be considered in determining any question of
> alleged deprivation of his life or liberty contrary to the
> Fourteenth Amendment." *Frank* v. *Mangum*, 237
> U. S. 309, 327 (1915) (citations omitted).

Similarly, although a State is not required to provide procedures for postconviction review, it seems clear that when state collateral review procedures are provided for, they too are part of the "process of law under which [a prisoner] is held in custody by the State." *Ibid.* As this Court has explained, when considering whether the State has provided all the process that is due in depriving an individual of life, liberty, or property, we must look at both pre- and post-deprivation process. See *Cleveland Bd. of Ed.* v. *Loudermill*, 470 U. S. 532, 547, n. 12 (1985) ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures"); see also *National Private Truck Council, Inc.* v. *Oklahoma Tax Comm'n*, 515 U. S. 582, 587 (1995); *Mathews* v. *Eldridge*, 424 U. S. 319, 349 (1976). There is no principled reason this Court should refuse to allow §1983 suits to challenge part of this process—the trial proceedings—but bless the use of §1983 to challenge other parts.

Collateral review procedures are, of course, "not part of the criminal proceeding itself." *Pennsylvania* v. *Finley*, 481 U. S. 551, 557 (1987). But like trial and direct appellate procedures, they concern the validity of the conviction.

Trial procedures are used to initially convict a prisoner; appellate procedures review the validity of that conviction before it becomes final; and collateral review procedures permit challenge to the conviction after it is final. For purposes of deciding which claims fall within the bounds of §1983, I think it makes sense to treat similarly all constitutional challenges to procedures concerning the validity of a conviction. See *Heck*, *supra*, at 491 (THOMAS, J., concurring) ("[I]t is proper for the Court to devise limitations aimed at ameliorating the conflict [between habeas and §1983], provided that it does so in a principled fashion").

Second, "principles of federalism and comity [are] at stake" when federal courts review state collateral review procedures, just as when they review state trial procedures. *Osborne*, 557 U. S., at ___ (ALITO, J., concurring) (slip op., at 2). An attack in federal court on any "state judicial action" concerning a state conviction must proceed with "proper respect for state functions," because the federal courts are being asked to "tr[y] the regularity of proceedings had in courts of coordinate jurisdiction." *Preiser*, 411 U. S., at 491 (internal quotation marks and emphasis omitted).

Because of these concerns for federal-state comity, Congress has strictly limited the procedures for federal habeas challenges to state convictions and state habeas decisions. Congress requires that before a state prisoner may seek relief in federal court, he must "exhaus[t] the remedies available in the courts of the State." 28 U. S. C. §2254(b)(1)(A). And state habeas determinations receive significant deference in subsequent federal habeas proceedings. §2254(d). These requirements ensure that the state courts have the first opportunity to correct any error with a state conviction and that their rulings receive due respect in subsequent federal challenges.

By bringing a procedural challenge under §1983, Skin-

ner undermines these restrictions. For example, Skinner has never presented his current challenge to Texas' procedures for postconviction relief to the Texas courts. Allowing Skinner to artfully plead an attack on state habeas *procedures* instead of an attack on state habeas *results* undercuts the restrictions Congress and this Court have placed on federal review of state convictions. See *Osborne*, *supra*, at ___ (ALITO, J., concurring) (slip op., at 3). To allege that the Texas courts erred in denying him relief on collateral review, Skinner could only file a federal habeas petition, with its accompanying procedural restrictions and deferential review. But a successful challenge to Texas' collateral review procedures under §1983 would impeach the result of collateral review without complying with any of the restrictions for relief in federal habeas.

The majority contends that its decision will not "spill over to claims relying on *Brady* v. *Maryland*, 373 U. S. 83 (1963)." *Ante*, at 13; but cf. *Osborne*, *supra*, at ___–___ (ALITO, J., concurring) (slip op., at 3–5). In truth, the majority provides a roadmap for any unsuccessful state habeas petitioner to relitigate his claim under §1983: After state habeas is denied, file a §1983 suit challenging the state habeas process rather than the result. What prisoner would not avail himself of this additional bite at the apple?[3]

---

[3] Nor is there any reason to believe that the Court's holding will be cabined to collateral review procedures. The Court does not discuss whether a State's direct review process may be subject to challenge under §1983, but it suggests no principled distinction between direct and collateral review. This risks transforming §1983 into a vehicle for direct criminal appeals. Cf. *Heck* v. *Humphrey*, 512 U. S. 477, 486 (1994). Just as any unsuccessful state habeas petitioner will now resort to §1983 and challenge state collateral review procedures, so, too, will unsuccessful appellants turn to §1983 to challenge the state appellate procedures.

### III

The majority relies on *Dotson* to reach its conclusion. In that case, the plaintiffs alleged due process violations in state parole adjudications and sought injunctive relief and "a new parole hearing conducted under constitutionally proper procedures." 544 U. S., at 77. We found the claims cognizable under §1983.

*Dotson* does not control this case. Unlike state collateral review, parole does not evaluate the validity of the under-lying state conviction or sentence. Collateral review per-mits prisoners to "attack their final convictions." *Osborne*, *supra*, at \_\_\_ (ALITO, J., concurring) (slip op., at 2). In contrast, parole may provide release, but whether or not a prisoner is paroled in no way relates to the validity of the underlying conviction or sentence. Whatever the correct-ness of *Dotson*, parole procedures do not review the valid-ity of a conviction or sentence. For that reason, permitting review of parole procedures does not similarly risk trans-forming §1983 into a vehicle for "challenging the validity of outstanding criminal judgments." *Heck*, 512 U. S., at 486.

Contrary to the majority's contention, *Dotson* did not reduce the question whether a claim is cognizable under §1983 to a single inquiry into whether the prisoner's claim would "necessarily spell speedier release." See *ante*, at 11, 12, n. 12 (internal quotation marks omitted).[4] As we recognized in *Heck*, evaluating the boundaries of §1983 is not a narrow, mechanical inquiry. Even when the relief sought was not "speedier release," we inquired further and returned to first principles to determine that the chal-

––––––––––

[4] Because parole procedures are unrelated to the validity of a con-viction, a "necessarily spell speedier release" test may sufficiently summarize the analysis of §1983 challenges to parole procedures. But "necessarily spell speedier release" cannot be the only limit when a prisoner challenges procedures used to review the validity of the underlying conviction.

lenge in that case was not cognizable under §1983.[5]  See
512 U. S., at 486.  *Dotson* does not suggest that the *Heck*
approach, which I would continue to follow here, was
incorrect.

*          *          *

This Court has struggled to limit §1983 and prevent it
from intruding into the boundaries of habeas corpus.  In
crafting these limits, we have recognized that suits seek-
ing "immediate or speedier release" from confinement fall
outside its scope.  *Dotson*, *supra*, at 82.  We found another
limit when faced with a civil action in which "a judgment
in favor of the plaintiff would necessarily imply the inva-
lidity of his conviction or sentence."  *Heck*, *supra*, at 487.
This case calls for yet another: due process challenges to
state procedures used to review the validity of a conviction
or sentence.  Under that rule, Skinner's claim is not cogni-
zable under §1983, and the judgment of the Court of Ap-
peals should be affirmed.  I respectfully dissent.

---

[5] As respondent argued, our existing formulations are not "the end of
the test."  Tr. of Oral Arg. 32–33.