MURGUIA, Circuit Judge,
concurring in part, and dissenting in part:
I disagree with the majority that the Supreme Court expressly “rul[ed] on the outer limits of habeas jurisdiction” in Skinner v. Switzer, 562 U.S. 521, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). See Majority 17. Skinner addressed whether a prisoner’s civil rights action could proceed under 42 U.S.C. § 1983, and did not involve a federal habeas petitioner, much less the scope of relief available under 28 U.S.C. § 2254. See Skinner, 131 S.Ct. at 1297 (“We take up -here only the questions whether there is federal-court subject-matter jurisdiction over Skinner’s complaint, and whether the claim he presses is cognizable under § 1983.” (emphasis added)). To accept the majority’s strained reading of Skimmer we have to believe that the Supreme Court, after leaving the issue open for over forty years,[1] conclusively determined the outer boundaries of habeas jurisdiction in a footnote of a case that did not involve a habeas petition. We likewise must ignore the Court’s explicit limitation that its decision was not intended to forge new law, see Skinner, 131 S.Ct. at 1299 n. 13 (stating that Skinner should not be interpreted to “mov[e] the line” drawn by the Court’s earlier decisions) (quoting Wilkinson v. Dotson, 544 U.S. 74, 84, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005)), and accept that the Supreme Court implemented this drastic change to habeas jurisdiction through an ambiguous statement rather than by clear direction.
Given these hurdles, I cannot agree with the majority that Skinner’s holding is clearly irreconcilable with our court’s decisions in Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989) (habeas jurisdiction is proper when a prisoner seeks expungement of a disciplinary finding if “expunge *1007 ment is likely to accelerate the prisoner’s eligibility for parole”), and Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir.2004) (habeas jurisdiction is proper when a prisoner’s challenge to parole procedures “could potentially affect the duration of ... confinement”) (emphasis in original). Even if the majority is correct that the footnote signals an answer to the issue the Supreme Court left open in Preiser, the majority is not free to disregard binding case law absent much clearer direction from the Supreme Court. See United States v. Green, 722 F.3d 1146, 1150 (9th Cir.2013). Because the majority’s holding exceeds the scope of authority granted to a three judge panel of our court, I must dissent.
I
By concluding that Bostic and Docken are clearly irreconcilable with Skinner, the majority fails to apply the requisite level of deference to our binding precedent. “As a three-judge panel of this circuit, we are bound by prior panel decisions ... and can only reexamine them when their ‘reasoning or theory’ of that authority is ‘clearly irreconcilable’ with the reasoning or theory of intervening higher authority.” Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 979 (9th Cir.2013) (quoting Miller v. Gammie, 335 F.3d 889, 893 (9th Cir.2003) (en banc)). There is no question that “clearly irreconcilable” is a “high standard.” Lair v. Bullock, 697 F.3d 1200, 1207 (9th Cir.2012) (internal quotation marks and citation omitted). Intervening higher authority is not clearly irreconcilable simply because there exists “‘some tension’ between the intervening higher authority and prior circuit precedent” or because “the intervening higher authority ... ‘east[s] doubt’ on the prior circuit precedent.” Lair, 697 F.3d at 1207 (internal citations omitted). Indeed, even “ ‘strong[ ] signals’ ” from the Supreme Court “aren’t enough” for a “three-judge panel to overrule existing circuit precedent.” Green, 722 F.3d at 1150 (quoting Miller, 335 F.3d at 900).
In Skinner, a state prisoner filed a § 1983 action alleging that the State’s refusal to release certain biological evidence for DNA testing violated his due process rights. 131 S.Ct. at 1296. The State sought dismissal of Skinner’s complaint on the basis that Skinner was using his § 1983 action “as a platform for attacking his conviction” — a complaint the State argued could “be pursued, if at all, in an application for habeas corpus.” Id. at 1299. The Supreme Court narrowly defined the issue implicated in Skinner, stating that the Court was addressing only whether Skinner’s claim could proceed under § 1983, not whether the same claim hypothetically could be brought in a habe-as petition. See 131 S.Ct. at 1297. Answering the narrow question before it, the Supreme Court held that Skinner’s claim was cognizable under § 1983 because the claim did not implicate core habeas jurisdiction. Id. at 1298. The Court reasoned that “[sjuccess in [Skinner’s] suit for DNA testing would not ‘necessarily imply’ the invalidity of his conviction” because a conclusion that DNA testing would ultimately prove Skinner’s innocence was anything but certain. Id. This holding reiterated what the Court has previously held: “core” habeas claims — claims that necessarily spell immediate or speedier release from confinement — must be brought in habeas, while non-core claims may be brought under § 1983. See Dotson, 544 U.S. at 81-82, 125 S.Ct. 1242 (surveying governing Supreme Court authority).
The majority reads Skinner differently, concluding that a single sentence of dicta in footnote 13 forecloses habeas jurisdiction for all non-core claims, including claims that closely relate to core habeas proceedings — ie., claims that, if successful, will not necessarily result in speedier re *1008 lease but could affect the duration of confinement. See, e.g., Bostic, 884 F.2d at 1269 (expungement of a disciplinary finding if “expungement is likely to accelerate the prisoner’s eligibility for parole”); Docken 393 F.3d at 1031 (when challenged parole procedures “could potentially affect the duration of [the prisoner’s] confinement”).
The majority’s strained reading of Skinner hinges on the following sentence in footnote 13: “[Wilkinson v.] Dotson declared ... in no uncertain terms, that when a prisoner’s claim would not ‘necessarily spell speedier release,’ that claim does not lie at ‘the core of habeas corpus,’ and may be brought, if at all, under § 1983.”[2] Skinner, 131 S.Ct. at 1297 n. 13 (quoting Dotson, 544 U.S. at 84, 125 S.Ct. 1242). Reading this statement in isolation, the majority creates what it coins “the Skinner standard” and determines that “we are bound by the Court’s express statement in Skinner that relief is available to a prisoner under the federal habeas statute only if success on the claim would ‘necessarily spell speedier release’ from custody.” In doing so, the majority abrogates our prior decisions in Bostic and Docken, where our court held that a prisoner’s claims are properly brought under § 2254 so long as the claim, if successful, would likely accelerate parole eligibility, Bostic, 884 F.2d at 1269, or “could potentially affect the duration of ... confinement.” Docken, 393 F.3d at 1031. I believe the majority is wrong and has exceeded its authority.[3]
*1009 To begin with, the “express statement” on which the majority relies is by no means a dear statement of intent by the Supreme Court. The sentence states that the Supreme Court’s decision in Dotson “declared ... in no uncertain terms” that only core habeas claims can be pursued under § 2254. This statement, however, is inherently ambiguous given that nothing in Dotson’s holding or reasoning supports the legal conclusion. As in Skinner, Dotson involved only whether prisoners seeking relief under § 1983 could pursue those claims in a civil rights action or, the corollary, whether the prisoner’s claims implicated “core” habeas jurisdiction and were therefore Heck-barred. See 544 U.S. at 82-84, 125 S.Ct. 1242 (noting prisoners can pursue relief under § 1983 without exhausting habeas remedy when success in the suit will not necessarily shorten the prisoner’s sentence). The Court in Dotson held that the prisoners’ claims — which alleged that the state’s retroactive application of harsher parole guidelines violated the Ex Post Facto clause — could proceed under § 1983. Nothing in the Court’s decision mandated that such claims be brought in a civil rights action. Id. Despite the majority relying entirely on dicta quoting the legal principle announced in Dotson, the majority is notably- silent about the fact that Dotson itself does not support the majority’s holding.
There are several additional reasons that undercut the majority’s conclusion that Skinner redefined habeas jurisdiction. The issue in Skinner involved “only ... whether the claim [Skinner] presses is cognizable under § 1983,” and the case did not involve a petition for writ of habeas corpus under § 2254, much less implicate the outer bounds of habeas jurisdiction. See 131 S.Ct. at 1297. In fact, despite many opportunities to address this issue, the Supreme Court has notably refrained from defining the scope of habeas jurisdiction for over four decades. See Preiser, 411 U.S. at 500, 93 S.Ct. 1827. Ironically, the majority’s conclusion that Skinner finally answers this open question conflicts with the very footnote on which the majority’s holding relies. The footnote expressly cautions against reading Skinner to “mov[e] the fine” drawn by the Court’s earlier decisions. 131 S.Ct. at 1299 n. 13 (“Given the importance of providing clear guidance to the lower courts, ‘we again see no reason for moving the line our cases *1010 draw.’” (quoting Dotson, 544 U.S. at 84, 125 S.Ct. 1242)).
Given the narrow issue before the Court in Skinner, and the Court’s explicit limitation in footnote 13 that its decision was not intended to forge new law, I cannot agree with the majority that the ambiguous footnote in Skinner mandates a departure from our case law.[4]
II
We review de novo a district court’s decision to deny a petition for habeas corpus. Bailey v. Hill, 599 F.3d 976, 978 (9th Cir.2010). Because Skinner does not abrogate our case law defining the scope of habeas jurisdiction, these consolidated appeals are governed by the law of this circuit. With respect to Matta Juan Santos’s appeal, the majority agrees that Skinner “is not ‘clearly irreconcilable’ with our earlier determination that we have ha-beas jurisdiction over a claim that would result in release from disciplinary segregation to the general prison population;” Majority at 1004-05. I therefore concur in Section III.B. of the majority opinion, which reverses the district court’s dismissal for lack of jurisdiction and remands for the district court to consider the merits of Santos’s habeas petition. Because I disagree that the majority’s newly created “Skinner standard” governs Nettles’s appeal, I write separately and evaluate Nettles’s claim under our court’s established authority. Applying controlling circuit authority, I would reverse the district court’s order of dismissal because Nettles has sufficiently alleged a claim cognizable under § 2254.
A
Damous Nettles, who is a California state prisoner serving an indeterminate life term for the heinous crimes described at length in the majority opinion, majority at 994-96, challenges a disciplinary finding in his prison record, which concluded that Nettles threatened to stab a correctional officer on February 26, 2008. In his fed-, eral habeas petition, Nettles argues that he was denied the opportunity to defend against the allegation because prison officials falsified evidence and refused to allow Nettles to present testimony from exculpatory witnesses, in violation of his constitutional rights. As a result of this disciplinary finding, Nettles was placed in segregated housing for four months, and he lost thirty days of post-conviction credit.
The February 26, 2008 violation, and others, was considered by the parole board a year later, on July 30, 2009, when the board convened for a parole suitability hearing and determined that Nettles was not suitable for parole because he “still pose[d] an unreasonable risk of danger if released from prison.” Under California *1011 law, if a prisoner is deemed unsuitable for parole, the board has discretion to determine when to schedule the next hearing— either 3, 5, 7, 10, or 15 years after the hearing at which parole is denied. Cal. Penal Code § 3041.5(b)(3). Without analysis, the board set Nettles’ next parole hearing for 2019 — ten years later.
In his federal habeas petition, Nettles asserts that “before the 2008 [violation] for threatening an officer, Nettles had gone a full decade without any disciplinary action for drugs or violence; if he is able to expunge the [violation], he would take to the Board today fifteen years free of any actions relating to drugs or violence.” He asserts that because the parole board must consider serious rule violations as a factor tending to show the prisoner is unsuitable for parole, Cal. Code Regs. tit. 15, § 2402(c)(6), expungement of his vile 2008 offense would result in a “significant change in evidence probative of his current dangerousness.” Nettles also contends that expungement will likely advance his next parole hearing because he will be able to show a “change in circumstances or new information” related to his current dangerousness. See Cal. Pen. Code § 3041.5(d)(1).
Nettles could be right; he could also be wrong. But, adhering to our binding precedent, the question before us is not what the parole board will ultimately decide should Nettles successfully expunge his 2008 rules violation or what we would do if we were sitting as parole commissioners. Indeed, “[w]e are ill-inclined ... to substitute our substantive analysis of the likely outcome of [Nettles]’ parole hearings for that of the Board.” Docken, 393 F.3d at 1031. The question before us is only whether Nettles’ claim, if successful, “could potentially affect the duration of ... confinement.” Id. (emphasis in original). Although Nettles’ 2008 disciplinary violation for threatening to stab a prison official was not the only, or even the primary, reason the board denied Nettles parole, expungement of the offense nonetheless could potentially affect the length of his confinement. Nettles does not allege that expungement would have caused the board to grant him parole in 2009. Rather, he contends that expunging the offense will likely accelerate his next parole hearing by changing the circumstances relevant to his current dangerousness; instead of his prison record reflecting a threat to murder a correctional officer in 2008, Nettles’ record will demonstrate that he has not been involved in a drug or violent offense in fifteen years. Under these circumstances, “[i]t is certainly at least possible that [Nettles’] suit would impact the duration of his confinement,” if the 2008 violation is expunged from his record. See Docken, 393 F.3d at 1031. Because Nettles has established a sufficient link between success in his claim and the duration of his confinement, I would reverse the district court’s order of dismissal and remand for the court to address the merits of Nettles’ claim in the first instance.
For the foregoing reasons, I respectfully disagree with the majority that the footnote of dicta in Skinner redefines the scope of habeas jurisdiction and abrogates our prior decisions in Bostic and Docken. Although I agree with the majority’s determination that Santos’s claim may be brought under § 2254,1 disagree that Nettles petition fails to assert a cognizable habeas claim. I would therefore reverse and remand in both cases because Santos and Nettles have each asserted a cognizable habeas claim under the law of our circuit. See Docken, 393 F.3d at 1031. I believe the majority’s conclusion to the contrary exceeds the authority granted to a three judge panel of this Court.

. See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (declining to address the "limits of habeas corpus as an alternative remedy to a proper action under [42 U.S.C.] § 1983”).

. Footnote 13, in its entirety, reads as follows:
Unlike the parole determinations at issue in Wilkinson v. Dotson, 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005), Switzer urges, claims like Skinner’s require inquiry into the State’s proof at trial and therefore lie at “the core of the criminal proceeding itself.” Tr. of Oral 41; see id., at 33-34; Dotson declared, however, in no uncertain terms, that when a prisoner’s claim would not "necessarily spell speedier release,” that claim does not lie at "the core of habeas corpus,” and may be brought, if at all, under § 1983. 544 U.S., at 82, 125 S.Ct. 1242 (majority opinion) (internal quotation marks omitted); see id., at 85-86, 125 S.Ct. 1242 (Scalia, J., concurring). Whatever might be said of Switzer’s argument were we to recast our doctrine, Switzer’s position cannot be reconciled with the line our precedent currently draws. Nor can the dissent's advocacy of a ”retur[n] to first principles.” Post, at 1303-1304. Given the importance of providing clear guidance to the lower courts, "we again see no reason for moving the line our cases draw.” Dotson, 544 U.S., at 84, 125 S.Ct. 1242.
Skinner, 131 S.Ct. at 1299 n. 13.

. Notably, the majority justifies its interpretation of Skinner by arguing that its opinion is "consistent with the interpretation adopted by two prior panels.” Majority at 1001 n. 8 (citing Blair, 645 F.3d at 1157-58; Griffin, 741 F.3d at 17 & n. 15). The majority’s reliance on these cases is curious, and most certainly misplaced, particularly because Griffin’s brief mention of habeas jurisdiction appears to conflict with the majority’s holding in Santos’s appeal. Griffin involved a California state prisoner who, like Santos, was a validated gang member who challenged his placement in the prison’s segregated security housing unit. 741 F.3d at 11. In a 2006 order, the district court granted Griffin's ha-beas petition and ordered that he be released from segregated housing. Id. at 14. The order was too late; Griffin had been charged in a federal RICO case and was in federal, not state, custody. Id. Griffin was subsequently transferred back to state prison and he sought enforcement of the 2006 order. “Procedurally,” the case before this- Court was "a mess.” Id. at 17. Relevant here is the Griffin panel’s dicta involving the 2006 order, where the panel stated that although the Ninth Circuit had previously held that such orders could issue on habeas, "the Supreme Court has since held otherwise.” Id. at 17 & n. 15 (citing Skinner, 131 S.Ct. at 1299 n. 13). Here, the majority contends its interpretation of Skinner "is consistent” with Griffin's, but the majority’s holding in Santos, where the petitioner seeks relief identical to the relief issued in the 2006 order, is in direct conflict with Griffin’s dicta. Majority at 1005 ("The Court has long indicated that a prisoner’s *1009 claim for release from one form of custody to another, less restrictive form of custody, can be brought in a habeas petition.”); id. at 27-28 (Santos’s "claim that he has been subjected to greater restrictions of his liberty without due process of law is therefore properly brought as a petition for a writ of habeas corpus.”).
The majority's reliance on Blair is no more compelling. In Blair, a habeas petitioner argued that his right to due process was violated because the California Supreme Court was taking too long to resolve his direct appeal. 645 F.3d at 1153. By the time the claim reached the Ninth Circuit, the California Supreme Court had already affirmed the petitioner's direct appeal on the merits, prompting the panel in Blair to dismiss the claim as moot. Id. The panel’s mootness holding renders its subsequent discussion of habeas jurisdiction an advisory opinion. See Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121. L.Ed.2d 313 (1992) ("[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.’ ” (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)); see also U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 507 (6th Cir.2007)).
Materially, in their brief discussions of ha-beas jurisdiction, Blair and Griffin did not cite to a single Ninth Circuit habeas case, much less decide that Bostic and Docken are clearly irreconcilable with Skinner. The majority exceeds its authority by reaching this conclusion today. See Green, 722 F.3d at 1150.

. To support its holding, the majority cites a number of pragmatic reasons for adopting its interpretation of Skinner. For example, the majority contends that its holding "not only provides guidance to prisoners regarding the correct form of action for their claims, but also resolves much of the understandable confusion of prison officials regarding which prisoner claims are cognizable in habeas.” Majority at 1002 n. 9. I agree that the majority’s holding draws a clear distinction between habeas jurisdiction and jurisdiction under § 1983 that will be easier to implement than our current jurisprudence. But no matter how practical the majority’s rule may be, and regardless of whether the Supreme Court will someday agree with the majority, the single sentence of dicta in Skinner does not give a three-judge panel authority to overrule the law that binds us now. See State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) (court of appeals "was correct” in adhering to binding precedent despite recognizing an "infírmf ]" Supreme Court decision that the court of appeals rightly predicted would be overturned by the Supreme Court).