Partial Concurrence by Judge HURWITZ;
Dissent by Judge BERZON
OPINION
IKUTA, Circuit Judge:
Damous Nettles, a prisoner serving a life sentence in California prison, appeals the district court’s dismissal of his habeas petition for lack of jurisdiction. The petition challenged a disciplinary violation on constitutional grounds and claimed that the failure to expunge this violation from *925 his record could affect his eligibility for parole. We conclude that because Nettles’s claim does not fall within the “core of habeas corpus,” Preiser v. Rodriguez, 411 U.S. 475, 487, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), it must be brought, if at all,, under 42 U.S.C. § 1983.
I
In 1990, Nettles was convicted in California of attempted first degree murder with the use of a firearm and other offenses. The victim was a woman who had filed a complaint against Nettles’s brother. In order to prevent her from testifying, Nettles took the victim down an alley, ordered her onto her hands and knees, and told her “You’re not going to testify against my brother. I’m going to' kill you.” Nettles then shot her twice in the left ear and left her in the alley. The victim did not die, but was seriously injured and disfigured.
Nettles was convicted for attempted murder and dissuading and conspiring to dissuade a witness from attending or giving testimony at trial. He was sentenced to prison for a determinate term of twelve years and a life term with the possibility of parole.
Under California law, prisoners with life terms like Nettles may not be released before their minimum eligible parole date (MEPD). Cal. Penal Code § 3041(a)(4). One year before a prisoner’s MEPD, a panel of the Board of Parole Hearings will meet with the prisoner and determine if the prisoner is suitable for parole. Id. § 3041(a)(2). “[A] life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to* society if released from prison.” Cal. Code Regs. tit. 15, § 2281(a). In determining the prisoner’s suitability for parole, the panel must consider “all relevant” information, id. § 2281(b), including disciplinary actions received during imprisonment. If the prisoner is suitable for parole and has reached the MEPD, the prisoner is entitled to release. Cal. Penal Code § 3041(a).[1] If the panel determines that the prisoner is unsuitable for parole, the Board of Parole Hearings will schedule a future hearing that could take place from three to fifteen years after the previous hearing, as directed by statutory criteria. Id. § 3041.5(b)(3). Once every three years, an inmate may request the board to exercise its discretion to accelerate the next hearing. Id. § 3041.5(d).
An initial parole consideration hearing for Nettles was held in 2004 after the presiding parole commissioner determined that Nettles’ MEPD was October 19, 2005. Before that hearing, prison staff had issued some thirty-nine rules violations reports to Nettles. These reports are issued for misconduct that “is believed to be a violation of law or is not minor in nature.” Cal. Code Regs. tit. 15, § 3312(a)(3). Nettles also received numerous citations for lesser types of misconduct. See id. § 3312(a)(2). At Nettles’s initial parole hearing in 2004, the Board of Prison Terms (now the Board of Parole Hearings, or Board)[2] deemed Nettles to be unsuitable for parole. It scheduled the next parole suitability hearing for 2006, but the date was postponed several times.
After 2004, Nettles received seven additional rules violations reports. On February 26, 2008, staff issued Nettles a rules *926 violation report for threatening to stab a corrections officer. After an investigation of the incident and a hearing, Nettles was found guilty and given a four-month term in the segregated housing unit. He also lost thirty days of postconviction credit.
On July 30, 2009, the Board convened a second parole suitability hearing for Nettles. At the hearing, the presiding commissioner first described the facts of Nettles’s crime of conviction, characterizing it as “one of the most atrocious and cruel acts I’ve read” and stating that Nettles’s motive was “ridiculously heinous.” The commissioner then reviewed Nettles’s prior criminal history. Nettles had a long string of convictions beginning at age seventeen and had been in and out of prison for offenses including possession of drugs, assault with a deadly weapon, battery on a peace officer, and robbery. Nettles was on parole for the robbery conviction when he committed the attempted murder for which he was sentenced to life imprisonment. The commissioner stated that Nettles’s lengthy criminal history illustrated his inability to learn from prior incarcerations.
The commissioner next explained the hearing panel’s concerns about Nettles’s mental state and attitude about the crime. In the hearing panel’s view, Nettles’s letter to the victim did not express true remorse. Further, Nettles had not taken responsibility for his conduct and lacked insight that would enable him to change his behavior. The commissioner discussed a May 2007 psychological report, which gave Nettles “a rating of overall moderate likelihood to become involved in a violent offense if released.” Finally, the commissioner stated that Nettles was argumentative and stubborn, “challenge[d] authority at every given opportunity,” and refused to restrain himself, as evidenced by his numerous rules violations. The commissioner noted the forty-six rules violation reports that had been issued to Nettles while he was in prison. Nettles “continued to display negative behavior while incarcerated,” and as a result was placed in segregated housing. Moreover, Nettles had not taken any significant steps to gain skills to function outside of prison. Nevertheless, a deputy commissioner noted some positive steps Nettles had taken, including a slight reduction in the number of rules violations reports issued to Nettles in recent years.
The panel of the Board of Parole Hearings concluded that Nettles was unsuitable for parole because he “still pose[d] an unreasonable risk of danger if released from prison.” This finding was “based on weighing the considerations provided in the California Code of Regulations.” As authorized by the regulations, the commissioner made recommendations regarding “what steps may be undertaken to enhance the possibility of a grant of parole at a future hearing,” Cal. Code Regs. tit. 15, § 2304, telling Nettles that “[f]or next time, you certainly need to become and remain disciplinary free.”
On January 23, 2009, Nettles filed a habeas petition in the state trial court claiming, in relevant part, that the 2008 rules violation report was illegal and that the disciplinary proceedings held in connection with the 2008 rules violation report violated his due process rights. The court denied the petition, concluding that Nettles failed to exhaust his administrative remedies concerning these claims.[3] The California Court of Appeal and California Supreme Court then summarily denied the petition.
*927 On June 10, 2011, Nettles filed a habeas petition in federal court seeking expungement of the February 26, 2008 rules violation report and “restoration of good time,” presumably referring to the loss of thirty days of postconviction credits as a result of the 2008 disciplinary decision. After being ordered to respond, the state moved to dismiss the petition, arguing that the court lacked jurisdiction to entertain the petition because the 2008 disciplinary decision did not impact the fact or duration of Nettles’s confinement and so was not cognizable in habeas. Nettles opposed the motion, arguing that the disciplinary decision impacted the duration of his confinement because it delayed his parole hearing and constituted grounds for future denial of parole.
The district court dismissed Nettles’s petition, holding that he could not show that expungement of the 2008 rules violation report was likely to accelerate his eligibility for parole. Nettles timely appealed the district court’s decision.
We review de novo a district court’s decision to deny a petition for habeas corpus. Bailey v. Hill, 599 F.3d 976, 978 (9th Cir.2010). We also review de novo a district court’s determination that it does not have jurisdiction over a habeas corpus petition. Id.
II
The Supreme Court has recognized that “[federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871 ... 42 U.S.C. § 1983.” Muhammad v. Close, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (per curiam). “Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action.” Id. (internal citation omitted). The Court has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action. See, e.g., Wilkinson v. Dotson, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (characterizing the Court’s precedents as holding “that a state prisoner’s § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner’s suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration”). Based on our review of the development of the Court’s case law in this area, we now adopt the correlative rule that a § 1983 action is the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus.
A
The Supreme Court first addressed the scope of § 1983 vis-a-vis the scope of habeas in the leading case of Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In Preiser, state prisoners who had lost good-time credits as a result of disciplinary proceedings brought an action under § 1983 for restoration of the credits on the ground that the proceedings violated their due process rights. Id. at 476-77, 93 S.Ct. 1827. The prisoners would have been entitled to immediate release from prison if their good-time credits had been restored, and the Court therefore concluded that habeas was the exclusive remedy for these claims. Id. at 500, 93 S.Ct. 1827. Although “the literal terms of § 1983 might seem to cover” claims that a prisoner’s confinement violated the Constitution, id. at 489, 93 S.Ct. 1827, the language of the habeas statute is more specific, and the writ’s history makes clear that *928 it traditionally “has been accepted as the specific instrument to obtain release from [unlawful] confinement,” id. at 486, 93 S.Ct. 1827. Further, “habeas corpus actions require a petitioner fully to exhaust state remedies, which § 1983 does not.” Wilkinson, 544 U.S. at 79, 125 S.Ct. 1242 (citing Preiser, 411 U.S. at 490-91, 93 S.Ct. 1827). Based on “[t]hese considerations of linguistic specificity, history, and comity,” the Court concluded that Congress intended to make “an implicit exception from § 1983’s otherwise broad scope for actions that lie ‘within the core of habeas corpus.’ ” Id. (quoting Preiser, 411 U.S. at 487, 93 S.Ct. 1827). The claims at issue in Preiser, which would have resulted in immediate release if successful, fell within the core of habeas corpus and therefore had to be brought, if at all, in habeas. See id.
In a series of cases after Preiser, the Supreme Court distinguished between different sorts of state prisoner claims, indicating which claims were in the “core of habeas corpus,” Preiser, 411 U.S. at 489, 93 S.Ct. 1827, and thus could be brought only in a habeas petition, and which claims fell outside that core and could be brought in a § 1983 action. In Wolff v. McDonnell, the Court considered a § 1983 class action brought by state prisoners challenging prison rules, practices, and procedures and seeking restoration of good-time credits, injunctive relief, and damages. 418 U.S. 539, 542-44, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Court held that the plaintiffs’ claims for restoration of good-time credits were in the core of habeas and therefore outside the scope of § 1983. Id. at 554, 94 S.Ct. 2963. By contrast, claims challenging a prison’s “procedures for depriving prisoners of good-time credits” and seeking damages or a prospective injunction— claims which would not necessarily lead to an earlier release — could be brought in a § 1983 action. Id. at 554, 94 S.Ct. 2963 (emphasis added).
In Heck v. Humphrey, a state prisoner brought a § 1983 action for compensatory and punitive money damages against state officials who had allegedly engaged in unconstitutional procedures in their investigation and handling of evidence. 512 U.S. 477, 478-79, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Analogizing the prisoner’s § 1983 action to the common-law cause of action for malicious prosecution, id. at 484, 114 S.Ct. 2364, the Court held that a plaintiff could not bring a § 1983 action “that necessarily require[d] the plaintiff to prove the unlawfulness of his conviction or confinement,” id. at 486, 114 S.Ct. 2364. To bring such an action, the plaintiff would first have to prove that the conviction or sentence was eliminated, including “by a federal court’s issuance of a writ of habeas corpus.” Id. at 486-87, 114 S.Ct. 2364. By contrast, an action that, “even if successful, will not demonstrate the invalidity of any outstanding criminal judgment” falls within § 1983’s scope. Id. at 487, 114 S.Ct. 2364. This favorable termination rule polices “the intersection of the two most fertile sources of federal-court prisoner litigation — [§ 1983], and the federal habeas corpus statute,” id. at 480, 114 S.Ct. 2364, by ensuring that a court cannot address a § 1983 claim if doing so would require it to first resolve a claim that falls within the core of habeas corpus.
In Edwards v. Balisok, the Court held that a state prisoner’s challenge under § 1983 that “would necessarily imply the invalidity of the disciplinary hearing and the resulting [deprivation' of good-time credits]” fell within habeas’s exclusive domain and was barred by the rule in Heck, while a claim seeking an injunction barring future unconstitutional procedures was within the scope of § 1983 action. 520 U.S. 641, 644, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). The court later clarified, in Muhammad v. Close, that such challenges to disciplinary proceedings are barred by *929 Heck only if the § 1983 action would be “seeking a judgment at odds with [the prisoner’s] conviction or with the State’s calculation of time to be served.” 540 U.S. at 754-55, 124 S.Ct. 1303. If the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought in § 1983. See id[4]
In this series of cases, the Court made clear that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas and that such claims may not be brought under § 1983, but the Court did not have occasion to address the question whether § 1983 was the exclusive vehicle for claims outside, the core of habeas. In subsequent cases, the Court began suggesting that § 1983 was the sole remedy for such claims. See, e.g., Muhammad, 540 U.S. at 754-55, 124 S.Ct. 1303. In Muhammad, the Supreme Court limited the applicability of Heck by holding that a state prisoner was entitled to challenge administrative determinations that did not “raise any implication about the validity of the underlying conviction” or “necessarily” affect “the duration of time to be served” under § 1983 because such a challenge “raised no claim on which habeas relief could have been granted on any recognized theory.” Id. In other words, Muhammad suggested, without holding, that the scope of habeas is limited to claims in the core of habeas and does not extend to a claim that does not necessarily challenge the validity or duration of the underlying conviction or sentence.
This suggestion that § 1983 and habeas are mutually exclusive vehicles for prisoner claims appeared again in Wilkinson v. Dotson, 544 U.S. at 82, 125 S.Ct. 1242. In Dotson, state prisoners brought a § 1983 action to challenge the state’s practice of applying new parole procedures retroactively. Id. at 76-77, 125 S.Ct. 1242. Like earlier cases that had distinguished between state prisoner claims that were in the “core of habeas,” and thus could be brought only in a habeas petition, and those which could be brought in a § 1983 action, Dotson concluded that habeas was the exclusive vehicle for state prisoner claims where “success in that action would necessarily demonstrate the invalidity of confinement or its duration.” Id. at 82, 125 S.Ct. 1242. But a § 1983 action would lie where success on a claim means only that a prisoner will be eligible for parole review, “which at most will speed consideration of a new parole application.” Id. In rejecting the dissent’s argument that habe-as was available for challenges to parole procedures and therefore provided the exclusive vehicle for them, the Court suggested that habeas was available only for claims that seek “invalidation (in whole or in part) of the judgment authorizing the prisoner’s confinement.” Id. at 83, 125 S.Ct. 1242. The concurring opinion in Dotson picked up this suggestion that habeas was available only for claims in the core of habeas, stating that it “would utterly sever the writ from its common-law roots” to hold that “the habeas statute authorizes *930 federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody.” Id. at 86, 125 S.Ct. 1242 (Scalia, J., concurring).
Dotson’s suggestion that a § 1983 action is the exclusive vehicle for state prisoner claims that are not within the core of habeas was echoed more strongly in the Supreme Court’s most recent pronouncement on this issue, Skinner v. Switzer. 562 U.S. 521, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). There, a state prisoner moved in state court for DNA testing of certain crime scene evidence. Id. at 527-29, 131 S.Ct. 1289. After the state court denied the motions, the prisoner brought a federal action for injunctive relief under § 1983, alleging a due process violation. Id. at 529, 131 S.Ct. 1289. The district court dismissed the action on the ground that “postconviction requests for DNA evidence are cognizable only in habeas corpus, not under § 1983.” Id. The Court disagreed and indicated that the correct analysis was the exact opposite: because an action for DNA testing was not within the core of habeas, it could be brought only in § 1983. Id. at 533-34, 535 n. 13, 131 S.Ct. 1289. In reaching this conclusion, the Court relied first on the Dotson concurrence and its indication that habeas was available only for claims in the core of habeas corpus. “It suffices to point out that [the state] has found no case, nor has the dissent, in which the Court has recognized habeas as the sole remedy, or even an available one, where the relief sought would ‘neither terminate] custody, accelerate] the future date of release from custody, nor reduc[e] the level of custody.’ ” Id. at 534, 131 S.Ct. 1289 (quoting Dotson, 544 U.S. at 86, 125 S.Ct. 1242 (Scalia, J., concurring)). Second, rejecting the state’s argument that a claim for DNA testing lay “at the core” of a criminal proceeding and had to be brought in habeas, the Court instead characterized its prior decision in Dotson as declaring “in no uncertain terms, that when a prisoner’s claim would not necessarily spell speedier release, that claim does not lie at “the core of habeas corpus,” and may be brought, if at all, under § 1983.” Id. at 535 n.” 13, 131 S.Ct. 1289 (internal quotation marks omitted). Skinner also alluded to the existence of a firm line between habeas and § 1983, noting that the state’s argument “cannot be reconciled with the line our precedent currently draws” between habeas and § 1983, and suggested that the core of habeas defines the contours of that line. See id.[5]
We read these statements as strongly suggesting that habeas is available only for state prisoner claims that lie at the core of habeas (and is the exclusive remedy for such claims), while § 1983 is the exclusive remedy for state prisoner claims that do not lie at the core of habeas. Although the Supreme Court has not provided an express ruling on the scope of habeas, “we afford ‘considered dicta from the Supreme Court ... a weight that is greater than ordinary judicial dicta as *931 prophecy of what the court might hold.’ ” Managed Pharmacy Care v. Sebelius, 716 F.3d 1235, 1246 (9th Cir.2013) (quoting United States v. Montero-Camargo, 208 F.3d 1122, 1132 n. 17 (9th Cir.2000) (en banc)); see also United States v. Baird, 85 F.3d 450, 453 (9th Cir.1996) (“Although the Daniel construction ... may be dictum, we treat Supreme Court dicta with due deference, and see no reason not to apply the Court’s construction in the case at bar.”).
The dissent heavily relies on cases where prisoners in federal custody brought habeas petitions under 28 U.S.C. § 2241 claiming that the Bureau of Prisons acted contrary to a federal statute that authorized it to shorten the sentence of a federal prisoner under certain circumstances. Dissent at 938-40, 945-46. See, e.g., Rodriguez v. Copenhaver, 823 F.3d 1238, 1243, No. 14-16399, 2016 WL 3003423, at *4 (9th Cir. May 25, 2016); Close v. Thomas, 653 F.3d 970, 973-74 (9th Cir.2011); Crickon v. Thomas, 579 F.3d 978, 982 (9th Cir.2009). None of these cases addressed the scope of habeas relief available to federal prisoners under § 2241, and therefore they shed no light on the issue before us. Nor do the Supreme Court’s recent cases addressing the scope of habeas petitions vis-a-vis § 1983 involve the rights of federal prisoners. See, e.g., Skinner, 562 U.S. at 527, 131 S.Ct. 1289; Dotson, 544 U.S. at 82, 125 S.Ct. 1242. Because the case before us involves a state prisoner’s action under 28 U.S.C. § 2254, we need not address how the standard suggested in Skinner and adopted here applies to relief sought by prisoners in federal custody.[6]
Accordingly, we hold that if a state prisoner’s claim does not lie at “the core of habeas corpus,” Preiser, 411 U.S. at 487, 93 S.Ct. 1827, it may not be brought in habeas corpus but must be brought, “if at all,” under § 1983, Skinner, 562 U.S. at 535 n. 13, 131 S.Ct. 1289. We therefore overrule Docken v. Chase, 393 F.3d 1024 (9th Cir.2004), and Bostic v. Carlson, 884 F.2d 1267 (9th Cir.1989), to the extent they are inconsistent with this rule.
B
Other factors support our adoption of the Supreme Court’s strong suggestion that a § 1983 action is the exclusive vehicle for claims that are not within the core of habeas.
First, such a conclusion is consistent with the analytical framework in Preiser. In holding that § 1983 did not extend to claims within the core of habeas, Preiser put great weight on congressional intent in determining that Congress had amended the habeas statutes to require the “exhaustion of adequate state remedies as a condition precedent to the invocation of federal judicial relief under those laws” as a way to further Congress’s policy goal of avoid *932 ing “unnecessary friction between the federal and state court systems.” 411 U.S. at 489-91, 93 S.Ct. 1827. The Court held that it should respect this congressional intent, id. at 492 n. 10, 93 S.Ct. 1827, and that “[i]t would wholly frustrate explicit congressional intent to hold that the respondents in the present case could evade this requirement by the simple expedient of putting a different label on their pleadings,” id. at 489-90, 93 S.Ct. 1827.
Just as Congress’s amendments to the habeas statute indicated an intent to make habeas the exclusive remedy for claims at the core of habeas, see id. Congress’s enactment of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), indicated an intent to make § 1983 the exclusive remedy for “all inmate suits about prison life,” Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The PLRA was intended “to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court.” Id. at 528, 122 S.Ct. 983. Before the PLRA, plaintiffs pursuing actions under § 1983, including “[p]risoner suits alleging constitutional deprivations while incarcerated” did not have to “exhaust administrative remedies before filing suit in court.” Id. at 523, 122 S.Ct. 983 (citing Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam)). But Congress “enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits” by requiring exhaustion of prisoners- § 1983 claims. Id. at 524, 122 S.Ct. 983.[7] Congress intended this exhaustion requirement to have a broad scope: “[T]he PLRA’s exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.” Id. at 532, 122 S.Ct. 983.
Congress’s intent that state prisoners satisfy PLRA requirements for all § 1983 suits about prisoner life (other than claims at the core of habeas) suggests that Congress wanted § 1983 to be the exclusive vehicle for such claims. As in Preiser, “[i]t would wholly frustrate explicit congressional intent” to hold that prisoners could evade the requirements of the PLRA “by the simple expedient of putting a different label on their pleadings.” 411 U.S. at 489-90, 93 S.Ct. 1827. Moreover, because Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub L. No. 104-132, 110 Stat. 1214, at the same time as it enacted the PLRA, we infer that Congress did not intend to make § 1983 and habeas regimes interchangeable or overlapping. AEDPA added procedural requirements for prisoners bringing habeas corpus petitions that are separate and distinct from those imposed on § 1983 claims by the PLRA, see Woodford v. Ngo, 548 U.S. 81, 97, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), indicating an intent to make these regimes independent and mutually exclusive.[8]
*933 In effect, these Congressional enactments channel prisoner litigation through the set of procedures that is best suited to address the type of prisoner grievance at issue. Many suits about prison conditions can be addressed effectively and speedily by correction officials through internal grievance procedures, which “might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.” See, e.g., Porter, 534 U.S. at 525, 122 S.Ct. 983. And if such claims are not resolved by corrective action at the prison, “adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.” Id. Thus, a § 1983 action subject to the PLRA exhaustion requirements, which mandate that a prisoner first exhaust the prison’s administrative processes to the extent they are available, is the best means of addressing such claims. On the other hand, habeas corpus is the exclusive remedy to attack the legality of the conviction or sentence, and for these sorts of claims the exhaustion requirement gives a state court “an opportunity to correct its own constitutional errors” before a federal court orders release, thus respecting traditional notions of federal-state comity. Preiser, 411 U.S. at 484, 490-91, 93 S.Ct. 1827. Our holding that a § 1983 action is the exclusive vehicle for suits about prison life furthers Congress’s efforts to direct prisoner litigation to the appropriate procedural channel.
C
We are also persuaded to adopt the rule that habeas is available only for actions in the “core of habeas” because it has the benefits of clarity and administrability. Our pre-Skinner opinions addressing this issue struggled to draw a line between habeas and § 1983 actions, and we have .not provided clear direction to state prisoners bringing such challenges or district courts addressing them. We have long held that prisoners may not challenge mere conditions of confinement in habeas corpus, see Crawford v. Bell, 599 F.2d 890, 891-92 (9th Cir.1979),[9] but we have reached inconsistent results in our efforts to delineate more precisely the claims which may not be brought in habeas. Thus, while we stated in Ramirez v. Galaza that a prisoner could not bring a habeas petition to seek expungement of a disciplinary charge where “a successful challenge to a prison condition will not necessarily shorten the prisoner’s sentence,” 334 F.3d 850, 859 (9th Cir.2003) (emphasis added), we subsequently stated, inconsistently, that prisoners could bring claims in a habeas petition “challenging aspects of their parole review” so long as success on the claims “could potentially affect the duration of *934 their confinement,” Docken, 393 F.3d at 1031 (emphasis added); see also Bostic, 884 F.2d at 1269 (holding that a prisoner could bring a petition in habeas to seek relief from various disciplinary decisions that resulted in “forfeiture of statutory good time or segregation from the general prison population,” where the relief was for “expungement of the incident from his disciplinary record” so long as such “ex-pungement is likely to accelerate the prisoner’s eligibility for parole.” (emphasis added)).
By contrast, Skinner*s core-of-habeas standard is a well-tested one that does not require the sort of probabilistic analysis found in some of our prior precedent, such as whether success on a claim would be “likely” to lead to an earlier release, Bostic, 884 F.2d at 1269, or “could potentially affect the duration of their confinement,” Docken, 393 F.3d at 1031 (emphasis added). The standard suggested in Skinner does not require us to guess at the discretionary decisions of state officials in order to determine whether an action sounds in habeas or § 1983, and which prerequisites must be met. And it follows Skinner’s suggestion “that habeas might not even be available for ‘probabilistic’ claims.” Davis v. U.S. Sentencing Comm’n, 716 F.3d 660, 665 (D.C.Cir.2013).[10] Thus the rule we adopt today, that if a state prisoner’s claim does not lie at “the core of habeas corpus,” Preiser, 411 U.S. at 487, 93 S.Ct. 1827, it may not be brought in habeas corpus but must be brought, “if at all,” under § 1983, Skinner, 562 U.S. at 535 n. 13, 131 S.Ct. 1289, will give needed clarity to state prisoners. If the prisoner’s claim challenges the fact or duration of the conviction or sentence, compliance with AEDPA is mandated, while if the claim challenges any other aspect of prison life, the prisoner must comply with the PLRA.[11]
Ill
We now apply this standard to Nettles’s federal habeas petition, which challenged the disciplinary proceedings held in connection with the 2008 rules violation report. Nettles argues that his claims affect the duration of his sentence because if he succeeded in expunging his 2008 rules violation report, the Board would more likely set his next parole hearing at an earlier date, Cal. Penal Code § 3041.5(b)(4), and would be more likely to give him a favorable parole ruling.[12]
We disagree. Success on the merits of Nettles’s claim would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead *935 to a grant of parole. Under California law, the parole board must consider “[a]ll relevant, reliable information” in determining suitability for parole. Cal. Code Regs. tit. 15, § 2281(b). A rules violation is merely one of the factors shedding light on whether a prisoner “constitutes a current threat to public safety,” In re Lawrence, 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, 553 (2008). Because the parole board has the authority to deny parole “on the basis of any of the grounds presently available to it,” Ramirez, 334 F.3d at 859, the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole.
Here, the panel of the Board of Parole Hearings considered a range of relevant factors bearing on Nettles’s future dangerousness, including his inability to learn from prior imprisonments, his lack of insight and remorse regarding his crimes, and his argumentative and stubborn attitude. The presiding commissioner discussed at great length the factors that led him to conclude that Nettles was not suitable for parole, including the heinous nature of Nettles’s crime of conviction, a psychological report on Nettles, and Nettles’s attitude. While the presiding commissioner did note the multiple rules violations reports issued to Nettles, his remarks gave no indication that Nettles’s 2008 violation report was an important, let alone determinative, factor in his decision.
Under. California law and the circumstances of Nettles’s case, the panel could deny parole to Nettles even if he succeeded in expunging the 2008 rules violation report. Furthermore, since the decision to grant an earlier release date on the basis of new information is placed in the discretion of the parole board, Cal. Penal Code § 3041.5(d)(1), success on Nettles’s claim would not even necessarily lead to an earlier parole hearing.
Because success on Nettles’s claims would not necessarily lead to his immediate or earlier release from confinement, Nettles’s claim does not fall within “the core of habeas corpus,” Skinner, 562 U.S. at 535 n. 13, 131 S.Ct. 1289, and he must instead bring his claim under § 1983.
IV
Although Nettles’s claims are not cognizable in habeas, we must still consider whether the district court may construe Nettles’s habeas petition as pleading a cause of action under § 1983.
The Supreme Court has long held that habeas petitions “may ... be read to plead causes of action under [§ 1983]” and that prisoners bringing the wrong action are “entitled to have their actions treated as claims for relief under the Civil Rights Acts.” Wilwording, 404 U.S. at 251, 92 S.Ct. 407. The Seventh and Eighth Circuits have also concluded that under certain circumstances, a court may convert a habeas petition into a civil rights claim under § 1983 or Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See Spencer v. Haynes, 774 F.3d 467, 471 (8th Cir.2014) (stating that habeas petitions can be re-characterized as § 1983 or Bivens actions); Robinson v. Sherrod, 631 F.3d 839, 841 (7th Cir.2011) (same); Glaus v. Anderson, 408 F.3d 382, 388 (7th Cir.2005) (stating that such recharacterization is not “utterly out of the question”).
The rule in Wilwording, however, was developed long before the enactment of the PLRA, during a time when a court could allow a pro se litigant to replead a habeas claim as a § 1983 claim or merely ignore the error in pleading. Glaus, 408 F.3d at 388. After the PLRA became effective, “a *936 habeas corpus action and a prisoner civil rights suit differ in a variety of respects— such as the proper defendant, filing fees, the means of collecting them, and restrictions on future filings — that may make recharacterization impossible or, if possible, disadvantageous to the prisoner compared to a dismissal without prejudice of his petition for habeas corpus.” Robinson, 631 F.3d at 841; see also Glaus, 408 F.3d at 388 (noting that recharacterizing a prisoner’s action as a civil rights action may make it subject to the PLRA’s three-strikes rule and different exhaustion requirements, as well as requiring the complaint to name a different defendant, such as the individual official responsible for the wrong rather than the warden).
In the reverse situation, where a district court recharacterized a pro se litigant’s civil rights claim as a habeas petition, the Supreme Court warned courts to avoid a recharacterization that disadvantaged a petitioner by, for example, subjecting the petitioner to restrictions on second or successive habeas petitions. Castro v. United States, 540 U.S. 375, 382-83, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003). Accordingly, Castro held that before recharacterizing a civil rights claim, a district court must “notify the pro se litigant that it intends to rechar-acterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on ‘second or successive’ motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.” Id. at 383, 124 S.Ct. 786; see also United States v. Seesing, 234 F.3d 456, 464 (9th Cir.2000) (holding that a court should not recharacterize a prisoner’s pro se filing as a federal habeas petition when doing so would be to the prisoner’s disadvantage).
We agree with the Seventh Circuit that “the same logic should apply to the potential conversion of a habeas corpus petition into a civil rights claim.” Glaus, 408 F.3d at 388. “If the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the pro se litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint.” Id.; see also Robinson, 631 F.3d at 841 (warning district courts “not to recharac-terize a prisoner’s petition for habeas corpus as a prisoner civil rights complaint without his informed consent”); Spencer, 774 F.3d at 471 (“[T]he better practice will be for district courts to first obtain the consent of the pro se individual before converting their claims from a habeas proceeding to a Bivens action.”):
Joining our sister circuits, we hold that a district court may construe a petition for habeas corpus to plead a cause of action under § 1983 after notifying and obtaining informed consent from the prisoner. Accordingly, we vacate the district court’s dismissal of this matter and remand it to the district court for proceedings consistent with this opinion.
VACATED AND REMANDED.

. Before state law changed on January 1, 2016, a prisoner's postconviction credits were a factor in determining the date the prisoner was entitled to release. Cal. Penal Code § 3041(a) (2015). This is no longer the case.

. At the time of the hearing, the Board was referred to as the Board of Prison Terms. This entity was replaced by the Board of Parole Hearings in 2005. See Cal. Gov't Code § 12838.4.

. As the state acknowledges, it did not argue to the district court that Nettles’s claim was procedurally barred. Nor does the state raise this issue on appeal. Therefore, we do not address it.

. According to the dissent, Balisok held that Heck bars a prisoner from bringing a § 1983 claim to challenge the procedures used in a disciplinary hearing, even if the claim would not necessarily affect the prisoner's sentence. Dissent at 939-40. But Muhammad rejected this "mistaken view” that Heck applies to “all suits challenging prison disciplinary proceedings,” and clarified that Heck applies only to administrative determinations that "necessarily” have an effect on "the duration of time to be served.” 540 U.S. at 754-55, 124 S.Ct. 1303; see also Wilkerson v. Wheeler, 772 F.3d 834, 840 (9th Cir.20Í4) (holding that after Balisok, Muhammad clarified that Heck does not bar a § 1983 claim that "threatens no consequence for [an inmate’s] conviction or the duration of [his or her sentence]”).

. While “courts originally confined habeas relief to orders requiring the petitioner's unconditional release from custody,” we have recognized that "[i]n modern practice” courts may "employ a conditional order of release in appropriate circumstances, which orders the State to release the petitioner unless the State takes some remedial action, such as to retry (or resentence) the petitioner.” Harvest v. Castro, 531 F.3d 737, 741 (9th Cir.2008). Contrary to the dissent, see Dissent at 941, this modern practice is consistent with the standard for habeas relief noted in Dotson and Skinner, because “the prisoner who shows his sentencing was unconstitutional is actually entitled to release, because the judgment pursuant to which he is confined has been invalidated; the conditional writ serves only to 'delay the release ... in order to provide the State an opportunity to correct the constitutional violation.’ ” Dotson, 544 U.S. at 86, 125 S.Ct. 1242 (Scalia, J., concurring).

. Different rules apply to state and federal prisoners seeking relief. "The general rule is that a motion under 28 U.S.C. § 2255 is the exclusive means by which a federal prisoner may test the legality of his detention, and that restrictions on the availability of a § 2255 motion cannot be avoided through a petition under 28 U.S.C. §2241.” Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir.2006) (internal citation omitted). By its terms, 28 U.S.C. § 2255 applies only to prisoners “claiming the right to be released” upon one of a few enumerated grounds. A federal prisoner may file a § 2241 petition "if, and only if, the remedy under § 2255 is inadequate or ineffective to test the legality of his detention” such as when a prisoner "(1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim.” Marrero v. Ives, 682 F.3d 1190, 1192 (9th Cir.2012) (internal quotation marks omitted). As a further distinction, § 1983 is generally unavailable to federal prisoners challenging prison conditions, but such prisoners may have recourse under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and the Federal Tort Claims Act (FTCA).

. 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions-under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.”

. The procedural requirements imposed by AEDPA and the PLRA are distinct in substantial respects. The PLRA attempts to "filter out nonmeritorious claims,” Jones v. Bock, 549 U.S. 199, 213, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), by requiring judicial screening of prisoner litigation, 28 U.S.C. § 1915(e), and depriving a prisoner of the right to file in forma pauperis if the prisoner incurs three "strikes,” defined as dismissals “on the grounds that [the claim] was frivolous, malicious, or fails to state a claim upon which relief may be granted,” id. § 1915(g). AEDPA does not have any similar requirements. AEDPA and the PLRA *933 also impose different exhaustion requirements. Under AEDPA, a state prisoner must pursue and exhaust all remedies available in state court before a federal court may entertain a petition, unless corrective process is unavailable in the state or is ineffective in protecting the prisoner's rights. Id. § 2254(b)(1). Under the PLRA, by contrast, prisoners must exhaust state administrative remedies by filing a grievance within the state prison system unless administrative remedies are not "available,” but the plaintiff need not exhaust state judicial remedies before filing in federal court. Id. § 1997e(a); Woodford, 548 U.S. at 85, 126 S.Ct. 2378; McBride v. Lopez, 807 F.3d 982, 986 (9th Cir. 2015). Furthermore, AEDPA bars second or successive petitions challenging the same state court judgment, with some narrow exceptions for claims that were not presented in the prior petition, see 28 U.S.C. § 2244(b), but the PLRA contains no analogous limitation.

. The Fifth, Sixth, Seventh, and Tenth Circuits have reached the same conclusion. See Luedtke v. Berkebile, 704 F.3d 465, 465-66 (6th Cir.2013); Glaus v. Anderson, 408 F.3d 382, 386 (7th Cir.2005); Carson v. Johnson, 112 F.3d 818, 820-21 (5th Cir.1997); McIntosh v. U.S. Parole Comm’n, 115 F.3d 809, 811-12 (10th Cir.1997). But see Aamer v. Obama, 742 F.3d 1023, 1031-32 (D.C.Cir.2014).

. The dissent cites to Fifth, Sixth and D.C. Circuit cases holding that “there is some degree of permissible overlap between § 1983 and habeas,” Dissent at 944, but each was decided before Skinner suggested a different standard. Davis is the only out-of-circuit case to date to consider Skinner’s suggestion regarding the scope of habeas relief.

. The dissent suggests that this rule deprives petitioners of a remedy for procedural violations. See Dissent at 938-39. To the contrary, our holding channels prisoner claims through the appropriate procedures, rather than foreclosing relief. Thus, if a state prisoner’s success in challenging a procedural violation would necessarily result in immediate or speedier release from custody, the prisoner’s claim would sound in habeas, while a state prisoner could challenge other procedural violations by bringing an action under § 1983.

.Nettles also argued that once granted parole, the panel’s calculation of the time he must serve before release will necessarily be affected by the reinstated postconviction credits. But after January 1, 2016, the effective date of the new law, the panel no longer calculates a release date, making this argument no longer relevant. See Cal. Penal Code § 3041(a).